Court. My name is Terry Jacobson, and I represent HEARTS BLUFF GAME RANCH. A review of the briefs by the parties in this case might suggest that this case is a complicated case, but it really isn't. We have a set of well-pledged, specific facts that tell a true story. We have a fairly small record, and really a single issue. And the single issue is, what analysis of the reasonable, of the compensable property interest should this court apply based upon the facts of this case? Well, what property interest do you contend that your client possesses? And Paolo Zello, Justice O'Connor, in a concurring opinion, made the point that the regime itself, the regulatory regime, in fact, can shape reasonable investment-backed expectations without actually providing a property right. And here, the way that the mitigation banking system is set up... Well, I don't think Terry Jacobson is asking you about the state of the Supreme Court law, but what right, which is part of the ownership interest in the property, you would approach on? We have the right to develop property. It's real estate. One of the suitable uses for our property is mitigation banking. The court provided a method for providing compensatory mitigation bank credits. But I think the question is, what was the entitlement at the stage at which the court withdrew its approval? We have the simple title of the property, the right to develop it. The court put that title, and that property right hasn't been altered, restricted, or in any other way encumbered. The only thing you don't have is an expectancy interest that you had in obtaining this mitigation bank permit. I think our expectancy was shaped by the court's actions and the regulatory scheme itself. The court created mitigation banking for its purposes, not ours. The only reason my clients purchased this property was to cooperate with the court in creating a beneficial property interest. And the court actually acquires real title rights in the property. On page 164 of the appendix, there's a conservation easement that's a sample or one that's used typically. The court actually gets vested property interests in the real estate. And my client is working with the court. That would be if the permits were granted, right? Well, I think as the court enforced properties suggested, that hinging a principal property interest determination, especially in a real property case on whether or not the permit is granted, is placing the cart before the horse. And that the better way to analyze whether we have a compensable property interest is to look at whether or not what we're doing is a reasonable investment back to expectation as part of Penn Central. So I don't think we have to have a permit already in hand to have an interest. Otherwise, you would have no Section 404 cases. You would have no other cases involving permits. That's kind of a broad-sweeping generalization of the law, would not provide fairness and justice, which are the underpinnings of an inverse condemnation case. This isn't a 404 case, is it? I think it is a 404 case. Mitigation banking does not exist independent of Section 404. The only reason the regulatory scheme was created was for us to supplement 404 by providing an accessible... If someone has a 404 permit and someone else... I think it's a second step to get this mitigation banking license. I think the mitigation banking license doesn't necessarily relate directly to a 404 permit request. What we do is create a stable of credits that the court can call upon when it needs compensatory mitigation for a 404 process. There is no such thing as mitigation banking absent 404. So I think it is part of the 404 process. Because it relates to real property and creates real property rights with the court, the better way to analyze the case is under a reasonable investment-backed expectations analysis under Penn Central, which this court does quite often in Section 404 permitting cases. Isn't this case directly analogous to the acceptance insurance case and American Apologetic case? I don't think so at all. In American Apologetic especially, as I recall, the fishing people never acquired rights in the land surrounding the island. Well, they purchased the ship in the expectation that they would get the fishing permit. But they didn't own the ocean they were going to fish in? They didn't own the ocean they were fishing in? Your client doesn't own the mitigation bank. Your client doesn't own anything in connection with the mitigation bank operations at all. Just your expectation was that you would be given a permit to participate, but that expectation was never realized. But it wasn't a unilateral expectation. It was a mutual expectation. It was symbiotic. We worked with the court well before we even acquired the property. My clients contacted the court and made sure that a mitigation banking permit system could be set up on this property. We wouldn't have bought it otherwise. But you're not alleging any kind of a contract to you? Not specifically, no. But either way, the court made the statement that this property was a great prospect for a bank. My clients wouldn't have purchased the property otherwise. To suggest that an American Apologetic situation could deprive my clients of the right to ever bring a cause of action would mean that property owners like my client would never, ever want to invest in the mitigation banking process ever. Because we have no reliance that the court would ever keep its word, no suggestion that the court would ever actually follow through on what it says. In fairness and justice, just simply going to a reasonable investment-backed expectations analysis where the trial court can analyze all the facts is the better and fairer way to approach it here. Completely writing this off, if the holding of this court would be that a mitigation banking project never has Fifth Amendment considerations or protections, that would be a radical departure from how this court has treated real property interests. But that's not really the facts here, is it? There was one more step, which would have been the issuance of the permit, and the court changed its mind before it did that. Otherwise, we'd have quite a different case. The court did change its mind for very invalid reasons. The court claimed that the mitigation banking area would not exist in perpetuity because of the Texas lake, the reservoir. However, had we gotten the mitigation banking permit, federal preemption would have given us perpetuity. So it isn't a situation where my clients lack good property or their financial resources or the ability to develop it. The court simply made a political decision after inducing my clients to spend $2.5 million and cooperating with them for two years of their own money to develop something that's beneficial, that the court needs and wants. This isn't a dredge and fill permit where we're doing harm to the environment. This is a situation where we're creating a resource that's a positive, beneficial, environmentally friendly bank of credits that the court will draw upon so they can fulfill their duties under 404. But just to be clear, you're not arguing in this or some other form that the court can be obliged to grant the permit? I don't think that as a matter of law, you're entitled to a mitigation banking permit every time you ask for one. But I think that it's a very fact-dependent inquiry. It requires an ad hoc analysis. We aren't suggesting that every mitigation banking denial, and there's only one, by the way, in the whole United States, and that's ours, gives rise to a Fifth Amendment claim. What we're asking this court to do is rather than analyzing on a per se basis, let us go back to the trial court and develop the facts and analyze our interest under the reasonable investment expectations analysis like you do in other 404 cases. That's all we're asking for here. We haven't got a chance to take a deposition, only have very few documents. What we want and what we ask the court to do is let us develop our case and then analyze it under a regime or a legal framework that gives us some fair opportunity to prove that we actually thought we would acquire something. Our expectations aren't unilateral. We worked with the court for two years plus, even before we bought the property, too, working for anyone. I think the relationship between my clients and… It sounds like your argument is almost a breach of contract, a stuffle kind of situation. Well, the Fifth Amendment would protect contract rights, but we didn't have a contract yet. Right. And yet we were recruited and incentivized by the regulatory scheme to invest our money and time in this process. And if we don't get any Fifth Amendment protection when we do that, you would never have anybody who would ever want to invest in a mitigation bank because you have to spend your money, work on the property, create it, buy it, and then wait two years to decide whether or not this requires that you have an ownership right in getting this mitigation permit. That's the question. And I think the right to develop property, the right for my clients under state law, there was certainly nothing in our title or deeds that precluded us from developing this as real estate. You still have the property. We still have the property. It's already in purpose. We never would have bought the property had it not been for the court. Never, ever, ever. We never would have involved ourselves in this location had the court not given us at least some assurance that if we did the things they were asking us to do, we would get a permit. And specifically, that the reservoir, Marvin Nichols Reservoir, would not impede my clients in developing their property as a mitigation bank. If a company engaged in some discussion with the government about possibly acquiring property and building, say, a new jail someplace, and the government said that would be terrific, and the company went ahead, made the investment, purchased the property, got everything ready, spent millions of dollars in anticipation of this contract, and then the government changed its mind at the last minute, would that amount to a taking? Good question. I think you have to analyze all the facts to figure out, especially what the initial Why is this any different? It's different because the system here, the mitigation banking system, is something that the core created for its own benefit. I realize that, but you don't have a property interest in that. I think the right to develop your real property, especially in conjunction with a core-created regime, ought to qualify as a real property right. Nothing in our title precluded it. For example, alcohol cases. You don't have the right to sell alcohol on your property. But an abuse of discretion denying an alcohol permit for a particular individual when zoning was correct would seemingly be something that should be litigated under whether state law or federal law, as the case may be. There are many permits and licenses. But that's an encumbrance on a property right that you possess. I'm sorry, sir? But that's an encumbrance on a property right that you possess. Whereas here, you don't have a property right in that permit. The right to develop your property as a slaughterhouse or a landfill, which are typically a nuisance kind of activities, the only right you have to develop the property for that purpose comes from the government when the government says, Here, you can now operate a slaughterhouse here. It's exactly the case we have here. Denying us the opportunity to even argue that there's a Fifth Amendment right before you even look at the facts and determine whether or not we had a reasonable investment back to expectation again goes way contrary to fairness and justice. This is a core-based system. The court requires real property rights in this, and if this court holds or were to hold that in mitigation-making cases you can never have a Fifth Amendment interest that's protected, nobody would ever want to invest in them because it's a huge risk because it takes a lot of money and a lot of time to do it. So I think the fair analysis, the initial fair analysis is simply let us go back to the trial court and show the trial court and maybe this court again whether or not we have reasonable investment back to expectations. Did what we did early on with the communications with the court, did that create something that we could reasonably rely upon? Otherwise, what you're telling us is we can't rely upon the court. We can't rely upon what they tell us. And this symbiotic relationship that should exist when you have the court in a land order doing something that actually promotes the court's interest would never happen, never ever. Let's hear from the government. Let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. My name is Tamara Mountrey. With me at the council table is Frank Singer, the Department of Justice attorney who handled this case in the court of federal claims. The property rights that Hart's Bluff claims were taken in this case are not rights that are near in ownership of land. Rather, they are benefits that may be given at the discretion of the government. Mr. Jacobson says that this is a matter of degree and they should be entitled to demonstrate through evidence the extent of their investment back expectations. Your Honor, it's well- They own the property. The question is now what could be used for? Well, it's well settled in this court that the takings inquiry is a two-part test. The first test is to determine whether the property right that has allegedly been taken is indeed a legally cognizable property right for Fifth Amendment purposes. It's only until the court is satisfied that that requirement has been met that the court can then go on to the part two of the analysis. And it's only under part two that the question is asked of whether there's a distinct investment back expectation. Hart's Bluff's urging that this court bypass the threshold inquiry finds no support in any authority. This court has to first determine whether the property right that's being alleged is one that's cognizable for purposes of compensation under the Fifth Amendment. If the court had granted the permit, would it be the same if they then changed their mind and withdrew it? It would be a different question. Most likely there wouldn't be a taking there. Perhaps that's what you're asking if the court had already issued the mitigation back instrument. And, for example, there was an ongoing mitigation bank operation. The reason I say it's not... It wouldn't be an issue. I do. Because that's the issue. Well, that's... They didn't grant it. Right. That's the only reason we were before the court is because they didn't grant it. But just to answer your question a little more fully, if it were granted, this mitigation bank instrument, it's not a permit that's issued, it's an instrument. The instrument is an agreement between the person or the entity that wants to operate the mitigation bank and the court. And the terms are all akin to... The court's aim says to the bank operator, we will provide you with individuals who need to purchase mitigation bank credits in order to go forward with the projects on their land. Maybe the thrust of Judge Newman's question is what if they had granted it and then six months later revoked it? Well, I'm sorry. I didn't get to the point. Would the grant then have been the kind of vested right, the revocation of which would have been a taking? Well, the reason I went on to explain that this is more akin to a contract is it seems perhaps it would be more akin to a breach of contract if the court, after having issued the instrument, decided to take it away or revoke it. It wouldn't be of the nature of the taking simply because the relationship that's established for the operation of the mitigation bank... It still wouldn't adhere to the property. Indeed. Indeed. And again, that's what this court has to ask. Now, when you analyze or try to determine whether Hartsbluff could possibly have a property right in these benefits that are provided by the government, it's important to take note that, for example, the mitigation bank elements, if you will, were created by the government, they're held exclusively by the government, and they exist only under the federal government mitigation bank program. Sort of like a grazing permit. I... A particular use of the property which is an inherent in the... Indeed. Indeed. Yes, that is true. The ownership. Absolutely right. What I was trying to get at, to lead you to, is at what point in the government's view, without binding you to a commitment forever, at what point in the government's view would this investor have acquired something or other which would be enforceable under the Fifth Amendment? Your Honor, under this program, there is nothing that would constitute a compensable property right for purposes of a taking, and that is because this entire program and nothing under it can be something that a landowner owns inherently upon acquiring title to land. As I said, this is something that was created by the federal government. It's held by the federal government. If one buys land, they don't have a vested inherent right in getting any of the benefits that flow from this program. It exists only under the program. And maybe I can make this a little more illustrative by asking the court to consider the circumstance of how things would play out here if the federal mitigation bank program never existed. If it never existed, could Hart's Bluff or any other landowner have a vested inherent right in benefits that exist only under the program? They say they have a promise, not reduced to writing, but that they have a promise from the court that this is a good idea, this property is suitable. That's what's been alleged in the pleadings, and under 12b-6, we have to assume that to be true. It is disputed. But under 12b-6, which is what the Court of Federal Claims ruled on, we assume that those facts as alleged to be true. A promise, even assuming one existed, does not establish a compensable or legally cognizable property right under these circumstances. The fact that somebody at the court might have said, you know what, your land looks really good, doesn't mean that all of a sudden Hart's Bluff has a property right, one that it's entitled to be compensated for under the Fifth Amendment. So you're not drawing a distinction between an oral promise or encouragement and something which was actually reduced to some kind of solid, objective form. I apologize if I don't understand your question. I wasn't, it's not that I was intending to dispute your question. I'm trying to understand their position. We accept that they were laid off. The court thought this was a good idea, and this property is suitable. It then turned out, for other reasons, apparently undisputable, that it wasn't such a good idea. And so I'm trying to understand at what point, and also that investment was made, and let's expect it relies on this oral representation from the court that they might encourage this. At what point would they have crossed the threshold where they would have some sort of remedy when the permission, whatever you call it, is not granted? Your Honor, with all due respect, I don't see that to be the inquiry here. The inquiry is much more basic. It's not at what point was the court's encouragement such that Hart's Bluff had a reliance. It's more fundamental. When Hart's Bluff first purchased the property, the question is, did they, or would any other landowner, necessarily have a vested right in receiving benefits that exist only under a federal government program? And the answer has to be no. Well, if that's the question, in some ways it's easier to answer. Mr. Jacobson says that it shouldn't be an absolute no. It should be subject to evidence as to just how profound was this investment bank expectation that they acted on. Again, Your Honor, this court cannot get to that question until it first determines whether the property rights that allegedly were taken are rights that adhere in ownership of land. We simply can't. There is no authority for bypassing that question. The question of factual or ad hoc determinations concerning distinct investment bank expectations is solely a part two analysis that this court can't reach yet. We have one threshold question here. It's a threshold inquiry, and it's to determine whether there is a compensable property right there. Let's just assume between us that we think we can reach the question. Let's assume whether we've come out that way or not. Is there any point at which the government could be bound to compensate for having withdrawn the understanding, the expectation, the authorization? Under a takings analysis, I don't see that, because I'm sorry. I don't see how Hartsbluff could have an inherent right to have any— Well, if someone owns shoal, right? If someone owns land they want to build on, and the Corps or someone comes in and says you can't build on that because we want to keep it for wetlands, then there would be a taking. So Judge Newman is saying if you get over the first threshold question, whether there is—that we have a full property right, which includes the right to have a mergers and negations permit, then denial might be just as denial of the right to build houses because of the wetlands issue might be a denial because you start with a full property right on the land. Well, just to distinguish between a circumstance where one wishes to, for example, build a house in a wetlands area, the underlying property right there is one that actually is inherent in owning land. That's why Judge Newman said what if we get over the first threshold? I just want to get over it in the proper way. But if you don't mind, just so—and I think this decision is very important. In a case in which someone says to the Corps, I'd like to build a house on my property, and it just so happens that I need to put some fill in wetlands, the primary question, the preliminary question there, the primary question is first, when someone buys land, do they have a right to put dirt on it? I think whether we analyze that under state law or federal law or common law, it wouldn't be disputed that the answer is yes. So the property right in that instance does exist because it's one that it does adhere in ownership of the land. And so then we could go on to the question of whether the government action amounted to a taking. We don't have that here, and that's why I'm so reluctant to jump on board with you. But let's assume that you find that there is a legally cognizable property right here. Number one, the appropriate thing would be to revamp the case so that the part two analysis can occur. And at that time, that's when the court would look at the pen central factors, which include whether there's a distinct investment expectation. That's the more fleshed out evidence-based, adventure-based analysis. Here it's much more fundamental. And Hart's bluff has not pointed to any authority or established in any way that this court could find that it actually possesses a vested inherent right in receiving the benefits under the federal money. Mr. Jacobson says that he would settle for the chance to go and litigate that question. And indeed, the minute he passes the initial hurdle, as with any claimant who brings a takings action, once they pass that initial hurdle, they can get to that point. Again, I know of no authority which allows this court to allow Hart's bluff to do so. There's no doubt he would settle for that. Indeed. I actually have nothing else that I think is absolutely necessary, perhaps with the exception of the reference to the fact that the court allegedly recruited or lured Hart's bluff into proposing that they operate a mitigation bank. Understanding, again, that we're under Rule 12b-6 and the facts are as alleged, it seems the appellate briefing has gone a step farther. There's nothing in the pleadings that even suggests that there was recruitment or luring. At the most, it seems there was encouragement on the part of the court and, again, of the nature of saying it looks like this could be a good property. And indeed, when the court ultimately disapproved this mitigation proposal, it did state that this could be a viable piece of land. But those... Your opponent says there was at least encouragement. And... And that they turned around and that became kind of a viable corridor. Again, accepting the facts is true. That still does not establish the legally cognizable property right. That must be proven here before we can get to any farther step in the analysis. Okay. Any more questions? Any more questions? Thank you, Mr. Hamilton. Mr. Jacobson. Thank you, Your Honor. Besides the right generally to develop your property, I think I can answer the court's question of where our right comes from. Nationwide Permit 27 specifically authorizes mitigation and permitting if you meet certain conditions. The court is the source of the stick in our bundle. They've told everybody through Nationwide Permit 27 that if you meet these criteria, we will give you one of these. It's right in Nationwide Permit 27 on the second page. So the court has created the right. It doesn't just apply to my clients. It applies to other landowners throughout the United States. What you have to meet are the criteria that the court specifies. So I think our right to develop our property, if it isn't inherent in our bundle of sticks, they gave us the stick by putting it out there. What about the acceptance of the contract? Nationwide Permit 27 doesn't require that, but ultimately to get your permit, you have to have a mitigation banking instrument. And that instrument itself is filed over record. It becomes a part of the real property. And the court can enforce the rights of the mitigation banking instrument any time it wants to. Are you saying that if the court cancels the mitigation banking program that there would be a potential Fifth Amendment taken? I would be hard-pressed to see how that would happen in most factual scenarios, but there could be a… You're saying that there's a property right just by virtue of the court's establishment of this program. There's as much of a property right here as one in the state of Texas or any other state that is in Columbia. It says you can sell alcohol or create a slaughterhouse or anything else. If you look to the background's federal and state law principles, one of those principles is Nationwide Permit 27. And it does create something for us to do if we meet the specific criteria the court has set forth. I'm not suggesting that they cancel the program, that that would result in multiple Fifth Amendment takings cases. But there might be one there somewhere depending upon what the facts provide. So a fact-based analysis is really the wiser and better way to approach this. So you're saying that the fact that that program exists gets you over the first hurdle? I think it certainly should. Otherwise… And it guides you to a hearing on the second hurdle. This court has consistently held in Section 404 cases that you consider the compensable property interest question as part of the reasonable investment backed expectations analysis. Norman, it says generally, not always. But this certainly, because it's really a 404 creature, ought to go that route and let us develop our facts and try our case in the trial court rather than the per se, you don't get it no matter what the court told you. That's the fair and just way to approach this issue. Thank you so much for your time. I appreciate it. If you have any questions, I can answer them in six seconds. May we be excused? Thank you. Thank you.